# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**AMY AND JOSHUA HINGISS,**
          **Debtors-Appellants,**

    **v.**                              **Case No. 11-C-0087**

**MMCC FINANCIAL CORP.,**
          **Creditor-Appellee.**

---

## OPINION

This is an appeal from the bankruptcy court's order sustaining the objection of MMCC Financial Corporation to the confirmation of Amy and Joshua Hingiss's Chapter 13 plan. The issue presented is whether the 910-day period in the "hanging paragraph" of 11 U.S.C. § 1325(a) is a statute of limitations subject to equitable tolling.

## I.  BACKGROUND

On June 1, 2007, debtors Amy and Joshua Hingiss purchased a 2004 Dodge Caravan. MMCC Financial Corporation financed the purchase and took a security interest in the vehicle. A security interest created through a transaction of this sort – in which a lender finances the purchase of an item and takes a security interest in the item purchased – is known as a purchase-money security interest. See UCC § 9-103(b) (2000).

On August 18, 2009, the Hingisses filed for bankruptcy under Chapter 13. (In a Chapter 13 bankruptcy, an individual seeks to reorganize his debts pursuant to a debt-repayment plan supervised by the bankruptcy court.) Because this filing occurred within 910 days of their purchase of the Dodge, the Hingisses were required to make full payment under their plan to MMCC pursuant to the "hanging paragraph" of 11 U.S.C. § 1325(a). (It

is called the hanging paragraph because it does not have a subsection designation.) The hanging paragraph prevents a debtor from using "cramdown" – forcing a secured creditor to take cash payments representing the value of its collateral instead of the collateral itself – when the Chapter 13 petition is filed within 910 days of a transaction creating a purchase-money security interest in a motor vehicle intended for personal use. See 11 U.S.C. § 1325(a)(hanging par.); In re Howard, 597 F.3d 852, 854-55 (7th Cir. 2010); In re Wright, 492 F.3d 829, 830 (7th Cir. 2007). Absent the hanging paragraph, the Hingisses could have proposed a plan in which MMCC's claim was "bifurcated" into a secured claim and an unsecured claim. The secured portion of the claim would have been the value of the Dodge (as determined by the bankruptcy court), and the Hingisses would have been required to make payments totaling this amount pursuant to their plan. The unsecured portion of the claim would have been the amount of the claim over and above the value of the Dodge. The difference between the amount of the claim and the value of the Dodge would likely have been significant, since vehicles decline in value rapidly and a purchaser often owes more on his car loan than the car is worth. Although the amount of MMCC's unsecured claim would have been significant, it probably would have been worth little, as are most unsecured claims in bankruptcy.

In accordance with the hanging paragraph, the Hingisses proposed in their plan to pay MMCC's claim in full. The bankruptcy court confirmed this plan on February 17, 2010. One day later, however, the Chapter 13 trustee filed an affidavit stating that the Hingisses had defaulted on their plan payments. Because of the default, the bankruptcy court dismissed the Chapter 13 case on February 26, 2010.

The Hingisses did not make any payments to MMCC after the dismissal of the bankruptcy case, and on May 24, 2010, MMCC obtained a judgment in state court allowing it to repossess the Dodge. Four days later – on May 28, 2010 – the Hingisses filed a second petition under Chapter 13 and moved for an extension of the automatic stay under 11 U.S.C. § 362, which the bankruptcy court granted. The automatic stay prevented MMCC from enforcing its state-court judgment or repossessing the Dodge.

Because the Hingisses filed their second Chapter 13 petition more than 910 days after the purchase of the Dodge, their second plan proposed cramdown in connection with MMCC's claim. MMCC objected to confirmation of the second plan on two grounds. First, MMCC contended that the Hingisses had engineered the filing and dismissal of the first bankruptcy case in order to take advantage of cramdown, and that therefore the second plan was not proposed in good faith. See 11 U.S.C. § 1325(a)(3). MMCC's theory was that the Hingisses had filed their first bankruptcy within the 910-day period so that the automatic stay would prevent MMCC from repossessing the Dodge before the period expired, and that the Hingisses then intentionally failed to make payments pursuant to their plan so that the first case would be dismissed, allowing them to file a fresh petition outside of the 910-period and take advantage of a second automatic stay and cramdown. The bankruptcy court rejected this argument, finding that the dismissal of the first case and filing of the second was attributable to Joshua Hingiss's employment status rather than a scheme to do an end-run around the 910-day period.

MMCC's second argument was that even if the Hingisses proposed their plan in good faith they should not be permitted to use cramdown because the 910-day period should be deemed to have been equitably tolled during the pendency of the Hingisses'

3

original Chapter 13 case. MMCC argued that it would be inequitable to allow the Hingisses to use the automatic stay that arose upon the filing of the first bankruptcy to prevent MMCC from repossessing the Dodge during the 910-day period, when MMCC would not have been subject to cramdown, only to have the first case dismissed outside of the 910-day period, thereby setting the stage for a second petition in which cramdown would be allowed. The bankruptcy court accepted this argument, reasoning that the Supreme Court's decision in Young v. United States, 535 U.S. 43 (2002), which applied equitable tolling to a different provision of the bankruptcy code, should be extended to § 1325(a)'s hanging paragraph. See In re Hingiss, 440 B.R. 787, 789-91 (Bankr. E.D. Wis. 2010). The court thus sustained MMCC's objection to confirmation and gave the Hingisses a chance to file an amended plan that provided for full payment of MMCC's claim. The Hingisses appeal this ruling, arguing that the 910-day period is not subject to equitable tolling because it is not a statute of limitations.[1]

## II. DISCUSSION

Before proceeding to the merits, I must confirm that I have jurisdiction over this appeal. The Hingisses contend that I have jurisdiction under 28 U.S.C. § 158(a)(1), which gives district courts jurisdiction over appeals from "final judgments, orders, and decrees" of the bankruptcy court. However, the bankruptcy court's order is not final in a strict sense, since the order contemplates the filing of an amended plan providing for full payment of MMCC's claim. Nonetheless, it is a final order within the meaning of § 158(a)(1). In bankruptcy appeals the concept of finality is "considerably more flexible than in [ordinary

---

[1]On appeal, MMCC does not challenge the bankruptcy court's determination that the Hingisses acted in good faith.

civil cases]." Zedan v. Habash, 529 F.3d 398, 402 (7th Cir. 2008). Although in ordinary civil cases an order is not final if proceedings in the lower court are ongoing, in the bankruptcy context finality does not require termination of the entire bankruptcy proceeding. Id. Instead, the test for finality is whether the order resolves a discrete dispute that would have been a stand-alone suit outside of bankruptcy. Id. Here, this test is met. The order of the bankruptcy court resolves the dispute between the Hingisses and MMCC over the treatment of MMCC's claim by providing that MMCC is entitled to full payment and is not subject to cramdown. Although the mechanics of how full payment is to be made under an amended plan have yet to be worked out, the stand-alone dispute over the treatment of the claim has been resolved. Cf. In re Szekely, 936 F.2d 897, 899 (7th Cir. 1991) (bankruptcy order is final when it provides that a specific creditor is entitled to a specified amount of money, even if the bankruptcy court has not yet determined the amount the creditor will actually receive).

Turning to the merits, the bankruptcy court concluded that the 910-day period in § 1325(a)'s hanging paragraph is a statute of limitations, that it is a statute of limitations that is subject to equitable tolling, and that the limitations period should be deemed to have been tolled during the pendency of the Hingisses' first Chapter 13 case. On appeal, the Hingisses challenge the first conclusion, arguing that the 910-day period is not a statute of limitations and that therefore the doctrine of equitable tolling does not apply. I review the bankruptcy court's interpretation of § 1325(a) de novo. See, e.g., Stamat v. Neary, 635 F.3d 974, 979 (7th Cir. 2011) (bankruptcy court's conclusions of law are reviewed de novo).

The bankruptcy court's interpretation of § 1325(a) was based on its reading of the Supreme Court's decision in Young v. United States, 535 U.S. 43 (2002), which held that

the "three year lookback period" for certain tax liabilities, 11 U.S.C. §§ 523(a)(1)(A), 507(a)(8)(A)(i), is tolled during the pendency of a prior bankruptcy petition. Pursuant to the provisions creating the lookback period, if the IRS has a claim for taxes for which the return was due within three years before the bankruptcy petition was filed, the claim is given eighth priority and is nondischargeable in bankruptcy. In <u>Young</u>, the debtors filed a Chapter 13 petition during the three-year period following the date on which their 1992 income tax return was due. During the pendency of the bankruptcy, the IRS could not take any action to collect the tax because the filing of the bankruptcy petition automatically stayed collection activity, but because of the lookback period its claim enjoyed eighth priority in bankruptcy and was not subject to discharge. Before the debtors' Chapter 13 plan was confirmed, however, the debtors moved to dismiss the petition. On the day before the Chapter 13 petition was dismissed, the debtors filed a second bankruptcy, this time under Chapter 7. The second bankruptcy was filed after the three-year lookback period had expired, and so the debtors thought the IRS's claim for unpaid taxes could be discharged. The Supreme Court disagreed, excluding the time during which the first bankruptcy was pending from the three-year period pursuant to principles of equitable tolling. <u>Id.</u> at 47. The reasoning that led the Court to apply equitable tolling to the three-year lookback period involved four steps: (1) determining that the three-year lookback period was a statute of limitations, <u>id.</u> at 47-49 , (2) invoking the principle of statutory interpretation stating that when Congress drafts a limitations period it is presumed to allow equitable tolling of that period, <u>id.</u> at 49-50, (3) determining that nothing in the bankruptcy code rebutted the presumption that the lookback period was subject to equitable tolling,

id. at 51-53; and (4) concluding that equity required tolling of the lookback period in the circumstances before the Court, id. at 50.

Because the Court's holding in Young depended on its conclusion that the three-year lookback provision was a statute of limitations, whether Young supports the conclusion that the 910-day period is subject to equitable tolling depends on whether the 910-day period is also a statute of limitations. The bankruptcy court concluded that it is, reasoning that "Young clearly held that a look-back period is a statute of limitations and is subject to equitable tolling." In re Hingiss, 440 B.R. at 791. However, the bankruptcy court reads the holding of Young too broadly. Young does not hold that all lookback periods are statutes of limitation; it holds only that one particular lookback period is a statute of limitations – the three-year lookback period. In the course of concluding that this particular lookback period is a statute of limitations, the Court identified attributes of statutes of limitation and found that the three-year period had those attributes. Thus, whether the 910-day period is also a statute of limitations depends on whether it has those same attributes.

The key attribute of a statute of limitations is that it prescribes a period within which certain rights may be enforced, thus encouraging the rightholder to take steps to enforce his rights before the period has elapsed. Young, 535 U.S. at 47. In Young, the rights at issue were the IRS's right to pursue the debtor for payment and, in the event of bankruptcy, to enjoy eighth priority and nondischargeability. The right to eighth priority and nondischargeability lasted for only three years, which encouraged the IRS to take steps to collect the debt within that time by, for example, actually collecting the debt or perfecting a tax lien. Id. As the Court recognized, the three-year lookback period thus served the

usual policies behind a statute of limitations – repose, elimination of stale claims, and certainty – in that it discouraged the IRS from sleeping on its rights and failing to utilize the enforcement mechanisms available to it within that time.  Id.

In contrast to the three-year lookback period, the 910-day period does not encourage a creditor to take prompt action to enforce its rights.  The period commences on the date a vehicle is purchased and a purchase-money security interest is created.  At this point, there is nothing for a creditor to do to enforce its rights that is analogous to the IRS's ability to collect unpaid taxes or perfect a tax lien.  Rather, the creditor merely sits back and awaits the buyer's periodic payments.   Not until the buyer defaults must the creditor spring into action to enforce its rights by, say, filing a state-court collections action or repossessing the vehicle.  Accord In re Murphy, 375 B.R. 919, 921 n.4 (Bankr. M.D. Ga. 2007) ("the 910-day time period is not a period during which the creditor must take some steps to protect its rights"). To be sure, in the event of a default within the 910-day period, the period has the incidental effect of encouraging the creditor to repossess swiftly to avoid being subject to cramdown if the buyer files for Chapter 13.  But this incidental effect does not turn the 910-day period into a limitations period.  Had Congress intended the 910-day period to serve as a statute of limitations on enforcement activity in connection with a default, the period would run from the date of the default rather than the date the security interest is created.  This is because a limitations period "commences when the claimant has a complete and present cause of action," Young, 535 U.S. at 49, and until the debtor defaults the holder of a purchase-money security interest has no cause of action.  Accord In re Maas, 416 B.R. 767, 771 (Bankr. D. Kan. 2009) (finding that the 910-day period is not a statute of limitations because, among other reasons, "the [910-day] time period

commences with the sale of a car and not the accrual of any cause of action"). Accordingly, because the 910-day period does not prescribe a period within which certain rights may be enforced, it is not a statute of limitations.[2]

Because the 910-day period is not a statute of limitations, and because the presumption of equitable tolling does not apply to a statutory provision that is not a statute of limitations, it follows that equitable tolling does not apply to the 910-day period. MMCC does not develop an argument in favor of interpreting § 1325(a)'s hanging paragraph to exclude from the 910-day period the time during which a prior bankruptcy was pending that does not depend on equitable tolling, and so I will apply the hanging paragraph's plain meaning and conclude that because the Hingisses filed their second bankruptcy after the 910-day period's expiration, they are entitled to take advantage of cramdown.[3]

---

[2]Although for present purposes it is enough to show that the 910-day period is not a statute of limitations, and thus not necessary to determine what Congress had in mind when creating the 910-day period, most likely Congress wanted to strike a balance between the creditor's interest in payment and the debtor's interest in coming up with a feasible Chapter 13 plan. On the one hand, Congress wanted to encourage the extension of secured credit by assuring financiers that they would not be subjected to cramdown in the event a buyer financed a vehicle on the eve of bankruptcy. On the other hand, Congress did not want to deprive debtors of the use of cramdown in connection with a vehicle loan indefinitely. In this regard, one court has said that the 910-day period is "more akin to a statute of repose" and that it could aptly be described as a "statute of enhancement" that gives a vehicle financier special treatment in bankruptcy for a limited period. In re Maas, 416 B.R. at 771-72.

[3]Although MMCC develops no argument that does not depend on equitable tolling, I note that Congress's actions in passing the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), which created the 910-day period, are inconsistent with an intent to exclude the time in which a prior bankruptcy was pending from the 910-day period. In BAPCPA, Congress explicitly codified the tolling rule of Young v. United States. See 11 U.S.C. § 507(a)(8)(A)(ii)(II); H.R. Rep. No. 109-31, pt. 1, at 101 (2005), reprinted in 2005 U.S.C.C.A.N. 88, 165. This demonstrates that at the time it enacted BAPCPA, Congress was familiar with the effect of serial bankruptcy filings on lookback periods and how such filings might impact the treatment of a creditor's claim. Nonetheless,

## III.  CONCLUSION

For the reasons stated, **IT IS ORDERED** that the order of the bankruptcy court is

**REVERSED** and this case is **REMANDED** to the bankruptcy court for further proceedings.

Dated at Milwaukee, Wisconsin, this 20th day of June, 2011.


/s_____
LYNN ADELMAN
District Judge

---

in drafting the 910-day period, Congress decided not to exclude from the period the time during which a prior bankruptcy was pending.  This creates a presumption against reading such an exclusion into the 910-day period, even if in some sense it might be considered equitable to do so.  See KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 543 U.S. 111, 118 (2004) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion" (citation omitted)).